**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KEEFE GROUP, LLC,**

                        **Plaintiff,**

**v.**                                        **Case No:  6:20-cv-2090-ACC-GJK**

**KHALIL I. RAJAB, and**
**JOHN DOE,**

                        **Defendants.**

_____

**REPORT AND RECOMMENDATION**

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR ENTRY OF DEFAULT JUDGMENT AND INCORPORATED MEMORANDUM OF LAW** (Doc. No. 26) |
| **FILED:** | **June 4, 2021** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**.

## I.     BACKGROUND.

On January 26, 2021, Plaintiff Keefe Group, LLC, filed a Complaint against Defendants Khalil I. Rajab and John Doe, seeking injunctive relief and damages under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, for trademark infringement and counterfeiting, false designation of origin, trade dress infringement, unfair

competition, and common law trademark and trade dress infringement. Doc. No. 12. Keefe Group sells potato chips, and one of its most popular products is The Whole Shabang potato chips. *Id.* at ¶ 1. Keefe Group sells its potato chips under the Moon Lodge trademark. *Id.* at ¶ 10. Keefe Group is the registered owner of The Whole Shabang and the Moon Lodge trademarks (collectively, the "Trademarks").[1] *Id.* Keefe Group is the exclusive owner of the Trademarks. *Id.* The Whole Shabang potato chips are sold "with a distinctive dark blue trade dress that mimicked a moonlit night (the "Trade Dress"). . . ." *Id.* at ¶ 12. Keefe Group alleges Rajab and Doe violated 15 U.S.C. §§ 1114 and 1125(a). *Id.* at 10-13.

Keefe Group alleges that Rajab and Doe are offering for sale potato chips that wrongfully use the two Trademarks and Trade Dress (the "Counterfeit Chips"). *Id.* at ¶ 16. The amended complaint contains pictures of The Whole Shabang potato chip bag and the Counterfeit Chips bag, demonstrating that the two bags contain the words "Moon Lodge," "The Whole Shabang," and "All-Seasoned Potato Chips." *Id.* at ¶ 17. The pictures on the bags both consist of a moonlit cabin on a lake and potato chips. *Id.* The coloring of the graphics and text on the bags is substantially similar, consisting of a dark blue background and

---

[1] The U.S. Trademark Registration Number for the Moon Lodge mark is U.S. Reg. No. 2,782,904, and the U.S. Trademark Registration Number for The Whole Shabang is U.S. Reg. No. 5,182,722. Doc. No. 12 at ¶ 10; Doc. Nos. 12-1, 12-2.

yellow chips. *Id.* Keefe Group alleges that the Counterfeit Chips were offered for sale at a Super Star K in this judicial district and that their chips are also sold in convenience stores throughout the United States. *Id.* at ¶¶ 13, 16.

Keefe Group alleges that Rajab distributed the Counterfeit Chips in this district and offered for sale and did sell the Counterfeit Chips to the Super Star K. *Id.* at ¶ 25. Keefe Group states that Rajab's and Doe's use of the Trademarks and Trade Dress are willful trademark infringement and are likely to cause and are causing confusion with customers. *Id.* at ¶¶ 27, 29.  Keefe Group contends that:

> [Rajab's and Doe's] use of the Trade Dress[ and the Trademarks] in connection with the sale of its Counterfeit Chips in interstate commerce is actively causing, and unless restrained, will continue to cause, monetary damage and immediate irreparable harm to Keefe [Group], its reputation, and the goodwill associated with the Trade Dress[ and the Trademarks] for which Keefe [Group] has no adequate remedy at law.

*Id.* at ¶ 30. Keefe Group seeks statutory damages in addition to injunctive relief. *Id.* at 14-15.

On February 3, 2021, Rajab was served with the amended complaint via substitute service on his co-tenant. Doc. No. 14. On February 19, 2021, Rajab filed an answer to the amended complaint. Doc. No. 15. On April 8, 2021, the Court struck the answer because it did not comply with Federal Rule of Civil Procedure 11(a) and Local Rule 1.08 and for Rajab's failure to respond to the Order directing him to comply with the Initial Case Order. Doc. No. 22. Rajab was given until April

21, 2021, to file an amended answer and show cause why he failed to comply with the Initial Case Order. *Id.* at 1. Rajab was warned that "**[f]ailure to respond to the show cause order or file the amended answer may result in default being entered against Defendant without further notice.**" *Id.* at 2 (emphasis in original). On May 3, 2021, the Court ordered the Clerk to enter a default against Rajab for his failure to respond or comply with its orders. Doc. No. 24. On May 4, 2021, the Clerk entered the default against Rajab. Doc. No. 25. On June 4, 2021, Keefe Group filed a motion for default final judgment against Rajab (the "Motion").[2] Doc. No. 26. Keef Group seeks statutory damages of $36,000, costs of $546.00, and a permanent injunction against Rajab. *Id.* at 13-14.

## II.      STANDARD OF REVIEW.

Keefe Group moves for default against Rajab under Federal Rule of Civil Procedure 55(b)(2), which provides for application to the court for a default judgment. Doc. No. 26 at 4. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed. R. Civ. P. 55(a). The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. Rather, before entering

---

[2] Keefe Group does not address the effect, if any, of naming John Doe as a defendant on its pursuit of a default judgment against Rajab. Doc. No. 26.

a default judgment, the Court must find that there is a sufficient basis in the pleadings for the relief requested. *Nishimatsu Constr. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.");[3] *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (same). Thus, the standard for reviewing a default judgment motion is "akin to [the standard] necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245 (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.")).

Complaints need not contain detailed factual allegations to support a default judgment motion, but there must be "more than an unadorned, the defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, when seeking a default judgment, a plaintiff should provide the Court with points and authorities containing citations to authority showing that the [p]laintiff's claim or claims include allegations of all

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the necessary elements required for entitlement to relief." *Johnson v. Cate*, No. 1:09–cv–00502–OWW–SMS, 2009 WL 2151370, at *2 (E.D. Cal. July 17, 2009). It is the plaintiff's burden to demonstrate, in a motion for default judgment, that the complaint's factual allegations are legally sufficient to establish one or more of its claims and to entitle it to the specific relief requested. *Id.*

### III.   ANALYSIS.

#### A.   <u>Counterfeiting and Trademark Infringement</u>

Keefe Group seeks to hold Rajab liable for willful trademark infringement pursuant to 15 U.S.C. § 1114 due to Rajab's counterfeit use of the Trademarks. Doc. Nos. 12, 26.  Under the Lanham Act, a defendant is liable for infringement if he uses in commerce any "'reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive'" without consent. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (quoting 15 U.S.C. § 1114(1)). To prevail on the trademark infringement claim, Keefe Group must establish: 1) that it had a valid trademark; and 2) that Rajab adopted an identical or similar mark such that consumers would likely confuse the two. *Id.*; *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1216 (11th Cir. 2000).

A party may be liable for trademark counterfeiting if a person counterfeits a registered mark and applies the counterfeit in connection with the sale of a good

such as is likely to cause confusion. 15 U.S.C. § 1114(1)(b). "A counterfeit is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. A plaintiff must also allege intent or bad faith. *Bentley Motors Ltd. Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1312 (M.D. Fla. 2013).

Keefe Group alleges that it has valid trademarks. Doc. No. 12 at ¶ 10. Keefe Group also alleges that Rajab used the Trademarks without consent, sold counterfeit goods bearing that mark, and that the sale of the Counterfeit Chips would likely confuse consumers. *Id.* at ¶¶ 16, 25, 27, 29, 30. Keefe Group included photographs of the counterfeit product and the Trademarks in the amended complaint. *Id.* at ¶ 17. Keefe Group alleges that Rajab's actions were willful. *Id.* at ¶¶ 27, 29.

Based on the well-pleaded allegations in the amended complaint, Keefe Group sufficiently alleges a claim for willful trademark infringement and counterfeiting against Rajab.

### B.   False Designation

Keefe Group seeks to hold Rajab liable for false designation of origin under 15 U.S.C. § 1125(a). Doc. No. 12 at ¶¶ 41-46. Section 1125(a)(1) provides that:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the

> affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

A prima facie case requires enforceable rights in the mark or name and unauthorized use "'such that consumers were likely to confuse the two.'" *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011) (quoting *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007)). Based on Keefe Group's allegations, which are taken as true, Keefe Group established it has enforceable rights in the Trademarks and that Rajab engaged in an unauthorized use of that mark "such that consumers were likely to confuse the two." *Id.*

### C.    Trade Dress Infringement

Keefe Group asserts a claim for trade dress infringement and unfair competition against Rajab. Doc. No. 12 at ¶¶ 47-52. Under the Lanham Act, a plaintiff suing for trade dress infringement must demonstrate that "(1) its trade dress is inherently distinctive or has acquired secondary meaning, (2) its trade dress is primarily non-functional, and (3) the defendant's trade dress is confusingly similar." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir. 1986)).

Keefe Group alleges that its dark blue packaging mimicking a moonlit night is distinctive. Doc. No. 12 at ¶ 12. Its trade dress is the packaging of its potato chips.

*Id.* at ¶ 12. Keefe Group included pictures of its trade dress and Rajab and Doe's packaging and alleged that the two are confusingly similar. *Id.* at ¶¶ 17, 27, 29. Keefe Group sufficiently establishes its trade dress infringement claim.

To sufficiently plead a claim for unfair competition under 15 U.S.C. § 1125, "a claimant must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion Inc. v. Techsplosion*, 261 F.3d 1188, 1193 (11th Cir. 2001). Because Keefe Group sufficiently pleaded a trademark infringement claim, it sufficiently pleaded a claim for unfair competition. *Miller's Ale House v. Boynton Carolina Ale House, LLC*, No. 09-80918-CIV, 2009 WL 6812111, at *5 (S.D. Fla. Oct. 13, 2009) ("Because a claim of trademark infringement is a type of unfair competition, the two claims have virtually identical elements, and are properly addressed together under § 43 of the Lanham Act.").

D.   <u>Common Law Trademark and Trade Dress Infringement</u>

Keefe Group's final claim against Rajab and Doe is for common law trademark and trade dress infringement. Doc. No. 12 at ¶¶ 53-59. The analysis of liability under Florida common law trademark and trade dress infringement is the same as under the Lanham Act. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) ("The analysis of liability for Florida common

law trademark infringement is the same as under the Lanham Act[,]" citing *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003)); *Conair Corp. v. K & A Beauty, LLC*, No. 6:14-CV-920-CEM-TBS, 2014 WL 4385635, at *4 (M.D. Fla. Sept. 4, 2014) (holding "that Florida courts would recognize a common-law unfair competition claim for trade dress infringement with the same elements as a federal trade dress infringement claim under § 43(a) of the Lanham Act."). Because Keefe Group established the elements of federal trademark and trade dress infringement, Keefe Group sufficiently pleaded Florida common law trademark and trade dress infringement claims.

E. Permanent Injunction

Keefe Group asks the Court to enter a permanent injunction against Rajab. Doc. No. 26 at 10. A district court may grant preliminary injunctive relief if the moving party shows that: 1) it has a substantial likelihood of success on the merits; 2) irreparable injury will be suffered unless the injunction issues; 3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) if issued, the injunction would not be adverse to the public interest. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004). The standard for a permanent injunction is the same as for a preliminary injunction except that the movant must show "actual success on the merits" instead of a "likelihood of success." *Id.* (citing *Amoco Prod. Co. v. Vill. of Gambell*,

480 U.S. 531, 546 n.12 (1987)).

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a). In trademark infringement actions, injunctive relief is appropriate when "'(1) there is not adequate remedy at law to redress infringement and (2) infringement *by its nature* causes irreparable harm.'" *See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (emphasis added) (quoting *Processed Plastic Co. v. Warner Commc'ns*, 675 F.2d 852, 858 (7th Cir. 1982)).  Further, in such cases, the public interest is "paramount." *BellSouth Advert. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991). Trademark infringement encroaches on "the right of the public to be free of confusion" as well as "the synonymous right of the trademark owner to control his products' reputation." *Id.* (citing *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)).

Here, based on the well-pleaded allegations of the amended complaint, Keefe Group established that Rajab's actions, by their nature, cause irreparable harm to it and that it has no adequate remedy at law. Doc. Nos. 12, 26. Permanent injunctive relief is appropriate here, and it is recommended that the permanent

injunction as requested in the Motion be entered.[4] Doc. No. 26 at 13-14.

      F.    <u>Statutory Damages</u>

Keefe Group seeks statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of $36,000. Doc. No. 26 at 11, 14. Section 1117(c) provides that in cases involving the use of a counterfeit mark in connection with a sale, offering or distribution, the plaintiff "may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits . . . an award of statutory damages [of] . . . not less than $1,000 or more than $200,000 per counterfeit mark per type of good or services sold . . . ." If the use is willful, a plaintiff may seek not more than $2,000,000, per counterfeit mark. *Id.* A trademark infringement is "willful" when "'the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright.'" *Stream, Inc. v. ASAT Inc.*, No. 18-14258, 2019 WL 1573337, at *4 (S.D.

---

[4] In the Motion, Keefe Group requests the following injunctive relief:

> Permanently enjoining and restraining Defendant Rajab from using the Moon Lodge® registered trade mark, The Whole Shabang® registered trademark, and Keefe's distinctive Trade Dress, or any other colorable imitation of the same, or any mark or trade dress that is confusingly similar to the same, or doing any other act or thing, likely to induce the belief that Defendant Rajab's business or products are in any way connected with Keefe's business or products or are sponsored or approved by Keefe; . . . Permanently enjoining and restraining Defendant Rajab from assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in [the] subparagraph [above.]

Doc. No. 26 at 13-14.

Fla. Apr. 11, 2019) (quoting *PetMed Express, Inc.*, 336 F. Supp. 2d at 1220). The Court has wide discretion to determine the amount of statutory damages. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1219.

Here, Keefe Group seeks an award of $36,000. Doc. No. 26 at 11, 14. Keefe Group argues that this amount "is an appropriate amount to send an unequivocal message to the industry that counterfeiting will not be tolerated." *Id.* at 11. Keefe Group submits its counsel's declaration stating that Rajab bought and sold at least thirty-two boxes of the Counterfeit Chips. Doc. No. 27 at ¶ 13. Keefe Group used a baseline of $2,000, trebled it based on Rajab's willful conduct, and doubled that "for the purpose of deterrence . . . ." Doc. No. 26 at 11. Keefe Group then multiplied the $12,000 by three for the three counterfeiting marks of the Moon Lodge, the Whole Shabang, and the Trade Dress, to arrive at $36,000. *Id.* at 11-12. Keefe Group's counsel also states in his declaration that it has spent more than $30,000 in attorney's fees in this action. Doc. No. 27 at ¶ 17.

Although Keefe Group does not state why it chose $2,000 as a baseline, Doc. Nos. 26, 27, it can be inferred that it used the figure in 15 U.S.C. § 1117(c)(1). The statutory scheme provides a minimum and maximum per counterfeit mark per type of good or service sold and a higher maximum for willful infringement. 15 U.S.C. § 1117(c). Here, because willful infringement is present, the statutory range is a minimum of $1,000 to a maximum of $2,000,000 per counterfeit mark. *Id.* Keefe

Group established Rajab willfully infringed on the two Trademarks and the Trade Dress. Thus, because the two Trademarks were counterfeited, the range of statutory damages is $2,000 to $4,000,000.

Keefe Group states that the $2,000 should be trebled "pursuant to § 1117(b)," but subsection b applies only to subsection a, which is the subsection awarding actual damages. As Keefe Group is seeking statutory damages under subsection c, Doc. No. 26 at 10-11, subsection b permitting trebling damages is inapplicable.

Broad discretion is afforded the district courts in determining statutory damages under 15 U.S.C. § 1117(c), and they "should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990). In calculating statutory damages in trademark infringement cases under Section 1117(c), courts have looked to cases involving willful copyright infringement for guidance. *Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*, No. 1:14-cv-22859, 2014 WL 4948632, at *8 (S.D. Fla. Oct. 2, 2014); *Bentley Motors Ltd. Corp. v. McEntegart*, No. 8:12-cv-1582-VMC-TBM, 2014 WL 408375, at *5 (M.D. Fla. Feb. 3, 2014) ("[T]he Lanham Act does not provide guidelines for courts to use in determining an appropriate award. However, many courts look to the Copyright Act's analogous provision, 17 U.S.C. § 504(c) in this situation." (internal citations omitted)). In those copyright cases, the courts generally consider the following:

> (1) the expenses saved and profits reaped; (2) the revenue lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Luxottica Grp. S.p.A.*, 2014 WL 4948632, at *4. "'Statutory damages are not intended to provide a plaintiff with a windfall recovery;' they should bear some relationship to the actual damages suffered." *Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2008) (quoting *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568-69 (S.D.N.Y. 1995) ); *Bentley Motors Ltd. Corp.*, No. 8:12-cv-1582-VMC-TBM, 2014 WL 408375, at *5 ("In determining an appropriate award of statutory damages, the Court must strike a balance between permitting a windfall for the plaintiff and emphasizing to the defendant 'that the trademark laws and court proceedings are not mere incidental costs to doing business in the profitable counterfeit trade.'") (*quoting Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 122-23 (S.D.N.Y. 2008)).

In Rajab's deposition, he testified that in at least one instance he bought ten boxes of the counterfeit chips for $24 and sold them for $35 and $36 per box. Doc. No. 26-2 at 5-6. Keefe Group's counsel's declaration states that Rajab bought and sold at least thirty-two boxes of the Counterfeit Chips. Doc. No. 27 at ¶ 13.

Keefe Group's efforts to determine the full extent of its damages were

thwarted, in part, by Rajab's refusal to respond to discovery. Doc. No. 26 at 3. Considering Keefe Group's counsel's declaration that Rajab bought and sold at least thirty-two boxes, and Rajab's testimony that he bought ten boxes for $24 and sold them for $36 per box, there is evidence that Rajab profited by at least $1,075.20.[5] Given the guidelines from the statutory scheme, the factors stated above, the facts presented, and the Court's discretion, the Court finds an award of $10,752.00 in statutory damages is appropriate. *See Deltona Transformer Corp. v. Odes Indus. LLC*, No. 6:20-CV-527-PGB-GJK, 2020 WL 6829200, at *5 (M.D. Fla. Oct. 1, 2020), *report and recommendation adopted*, 2020 WL 6828948 (M.D. Fla. Oct. 22, 2020) (finding award equal to ten times the amount of the single volume sale of the willfully counterfeited units "sufficient to serve the purposes of awarding statutory damages, but not excessive . . . ."). In making this finding, the Court is mindful of the policy behind statutory damages, including the goal of deterring willful infringers like Rajab, but not exceeding what is appropriately needed to achieve such goals in the context of this case.

G.    Destruction of Infringing Articles

Keefe Group requests that this Court enter a proposed order that includes

---

[5] Rajab testified that he paid $2.40 per box, which results in a total of $76.80 for thirty-two boxes, and that he sold the chips for $36 per box, for a total amount of $1,152.00 for selling thirty-two boxes, as alleged in Keefe Group's counsel's declaration. Doc. No. 26-2 at 5-6; Doc. No. 27 at ¶ 13. Subtracting $76.80  from $1,152.00 results in a profit of $1,075.20.

ordering Rajab to destroy any chips counterfeiting the Trademarks and Trade Dress. Doc. No. 26 at 14.  However, the Motion is silent as to authority for this relief. Doc. No. 26. 15 U.S.C. § 1118 provides that:

> In any action arising under this chapter, in which violation of any right of the registrant of a mark registered in the Patent and Trademark office, a violation under section 1125(a) of this title, or a willful violation under section 1125(c) of this title, shall have been established, the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark or, in the case of a violation of section 1125(a) of this title or a willful violation under section 1125(c) of this title, the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed.

Accordingly, having found that Rajab violated 15 U.S.C. § 1125(a) for false designation of origin, the Court finds that Keefe Group is entitled to the relief requested pursuant to section 1118.

###### H.   Costs

Keefe Group requests costs in the amount of $546.00 for filing fees and service costs.  Doc. No. 26 at 13; Doc. No. 27 at ¶¶ 19, 21. Under 15 U.S.C. § 1117, Keefe Group may recover the costs of the action. Costs for filing fees and service of process are recoverable. 28 U.S.C. § 1920(1). Keefe Group is therefore entitled to recover the $402 filing fee and the process server fee of $144.00. 28 U.S.C. § 1920.

## IV.    CONCLUSION.

Therefore, it is **RECOMMENDED** that the Motion (Doc. No. 26) be **GRANTED in part** and **DENIED in part** as follows:

1.    That judgment be entered against Rajab in the amount of $10,752.00 in statutory damages and $546.00 in costs;

2.    That Rajab be permanently enjoined from the following:

   a.    using the Moon Lodge® registered trademark, The Whole Shabang® registered trademark, and Keefe Group's distinctive Trade Dress, or any other colorable imitation of the same, or any mark or trade dress that is confusingly similar to the same, or doing any other act or thing, likely to induce the belief that Rajab's business or products are in any way connected with Keefe Group's business or products or are sponsored or approved by Keefe Group;

   b.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraph (a);

3.    That Rajab destroy any Counterfeit Chips currently in his possession, custody, or control; and

4.    In all other respects, that the Motion be **DENIED**.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on August 19, 2021.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties